```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA         :      CRIMINAL ACTION
                                 :
         v.                      :
                                 :
THOMAS HOFFNER, SR. and          :      NO. 00-456-01
MICHAEL HOFFNER                  :              -10
```

MEMORANDUM

Bartle, J.                                          November 16, 2005

Before the court are the timely motions of Thomas Hoffner, Sr. ("Hoffner, Sr.") and Michael Hoffner under 28 U.S.C. § 2255 to vacate, set aside, or correct their sentences.

I.

On August 9, 2000, the movants, along with nine others, were charged in a 21-count indictment with conspiring to distribute methamphetamine and related offenses. Hoffner, Sr. and Michael Hoffner, along with one other co-defendant, Frank "Wiggs" Bennett, were tried together in March, 2001 and were convicted of various offenses.[1] Hoffner, Sr. and Michael Hoffner were found guilty on Count One, which charged conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. Hoffner, Sr. was also convicted on Count Seventeen and both were convicted on Count Eighteen, which

---

1. Two defendants, Thomas Hoffner, Jr. and Mark Louis Katzin, Sr., were fugitives at the time of this trial. They were later arrested and tried in January, 2002.

charged use of a communication facility to commit a drug offense, in violation of 21 U.S.C. § 843(b). Hoffner, Sr. was sentenced to 264 months in prison and Michael Hoffner to 240 months. Michael Hoffner was also ordered to pay a fine of $2,000.

The Court of Appeals affirmed the convictions but vacated the sentences of both movants. United States v. Bennett, 74 Fed. App. 201, Nos. 01-3412, 01-3630, 01-3981 (3d Cir. 2003). On remand, we sentenced Hoffner, Sr. to 240 months on Count One and 48 months on Count Eighteen, to be served concurrently.[2] Michael Hoffner was resentenced to 124 months of imprisonment on Count One, with 48 months on Count Eighteen to be served concurrently. While his federal sentencing Guideline range was 135 months to 168 months, we gave him credit for eleven months of state custody between March 6, 2001 and February 22, 2002. He was again ordered to pay a fine of $2,000. We also recommended that the Bureau of Prisons place him into a drug treatment program.

Hoffner, Sr.'s amended judgment was entered on January 29, 2004. The amended judgment of Michael Hoffner was entered on February 4, 2004. They each filed pro se notices of appeal on February 4, 2004 and February 6, 2004, respectively. On the advice of counsel, each dismissed his appeal on February 19, 2004. On February 14, 2005 they filed their current § 2255 motions, the timeliness of which the Government does not

---

2. We granted the unopposed motion of Hoffner, Sr. for judgment of acquittal on Count Seventeen.

dispute. On September 23, 2005, movants filed a joint motion for leave to amend their § 2255 motions, which the Government opposes as time-barred under § 2255.

## II.

We first address the grounds for relief asserted in their original motions. Movants first contend that an expert witness for the Government testified falsely about the number of times he had previously testified as an expert. At their March, 2001 trial, the Government presented Special Narcotics Agent Kenneth Bellis ("Agent Bellis") of the Pennsylvania Attorney General's Office as an expert witness on "drug jargon." Movants assert that the subsequent testimony of Agent Bellis at the January, 2002 trial of Thomas Hoffner, Jr. ("Hoffner, Jr.") contradicted statements he made at their earlier trial.

A review of the transcripts of each trial reveals the following. On March 9, 2001, at the trial of Hoffner, Sr. and Michael Hoffner, Agent Bellis testified that he had been qualified in federal court on three prior occasions as an expert in interpreting "drug jargon" in wiretapped telephone conversations. United States v. Hoffner, Sr., Nos. 00-456-1-3-10, (E.D. Pa. 2001) (Tr. Mar. 9, 2001 at 99; Tr. Mar. 12, 2001 at 93). On January 7, 2002, at the trial of Hoffner, Jr., Agent Bellis again stated on the witness stand that he had been qualified as an expert in "drug jargon" in federal court on three occasions. United States v. Hoffner, Jr., Nos. 00-456-2-4 (E.D. Pa. 2002) (Tr. Jan. 7, 2002 at 11, 17). He added that each time

he had been qualified at a trial before the undersigned.  Id.  On cross-examination the following exchange took place.  This is the basis for the movants' false testimony argument:

> Q. It is fact [sic] that the only time you have been qualified as an expert with drug jargon has been before Judge Bartle.
> A. Yep.  It's the only – it's the only time I've ever had a trial involving a wiretap investigation, been in this court.
> Q. I didn't ask you that.  I asked you if you've ever been qualified before any other court or any other judge, with the exception of Judge Bartle, in the area of drug jargon.
> A. No.

Id. at 56, lines 14-21.

      Hoffner, Sr. and Michael Hoffner maintain that Agent Bellis' use of the singular when stating "it's the only time" evidences that Agent Bellis fabricated his testimony at their 2001 trial that he had been qualified in federal court on three occasions as an expert in interpreting "drug jargon" because the first and only time he had ever been qualified as such an expert was at their trial.  They further assert that had this court known this at the March, 2001 trial, there was a reasonable probability we would not have allowed him to testify as an expert witness.  They also argue that had his testimony been disallowed or had his lack of credentials been revealed by the prosecution there is a reasonable probability that the jury would have reached a different verdict.  See Napue v. Illinois, 360 U.S. 264, 271 (1959).

We held oral argument on the motion and ordered the Government to produce transcripts of any prior testimony of Agent Bellis in which he was qualified as an expert on "drug jargon". The Government produced transcripts from two trials which had occurred prior to the trial of movants. The first was United States v. Massey, Nos. 97-539-2-4 (E.D. Pa.), which took place before the undersigned in April, 1998 and the second was United States v. Hanton, No. 97-373-6 (E.D. Pa.), which took place before my colleague Judge Ronald L. Buckwalter in July, 1998. This court allowed the movants to supplement their initial briefs after reviewing the transcripts.

It is well settled that the Government may not use false or perjured testimony that bears upon the reliability and credibility of a witness to obtain a conviction. Giglio v. United States, 405 U.S. 150, 154 (1972); Napue, 360 U.S. 264; Mooney v. Holohan, 294 U.S. 103 (1935); see also Lambert v. Blackwell, 387 F.3d 210, 242 (3d Cir. 2004). If "the false testimony could ... in any reasonable likelihood have affected the judgment of the jury" a new trial is required. Napue, 360 U.S. at 271.

The movants must demonstrate that Agent Bellis perjured himself or at least gave false testimony at their trial. United States v. Agurs, 427 U.S. 97, 104 (1976); see also Lambert, 387 F.3d at 242. Agent Bellis testified in the March, 2001 trial that he had appeared as an expert on "drug jargon" in federal court on three prior occasions. The record now before this court

establishes that he was qualified as an expert on this topic at least twice previously, that is, in the Massey and Hanton cases. Thus, the movants' argument reduces itself to a quibble about whether Agent Bellis had testified about "drug jargon" on three previous occasions rather than two by the time of their trial. While Agent Bellis may have been mistaken as to the exact number of times he had previously testified as an expert on "drug jargon" in federal court, there is no evidence that this trivial discrepancy was anything more than an honest mistake and certainly cannot be said to rise to the level of false or perjured testimony.  Mooney, 294 U.S. at 112; United States v. Rose, 215 F.2d 617, 623 (3d Cir. 1954).

  The court had already qualified Agent Bellis as an expert on "drug jargon" in Massey in April, 1998.  There can be no doubt that this court would have again qualified Agent Bellis as an expert on "drug jargon" in March, 2001, regardless of how many times he had previously testified on the subject.  At the time of this trial, Agent Bellis was a supervisor in the narcotics division of the Pennsylvania Office of Attorney General.  For approximately seven years prior to that, he was a police officer in Philadelphia assigned to narcotics investigations.  He had spoken to drug dealers and made purchases from them on numerous occasions.  He had worked on over 500 different drug cases throughout his career and listened to tens of thousands of telephone conversations during wiretap investigations involving controlled substances.

Finally, even if Agent Bellis had never testified previously about "drug jargon" or had said he had testified on this subject only twice before, or had been inconsistent or unsure about the exact number of times he had testified previously about "drug jargon," there is not a reasonable likelihood that the jury would have disregarded his substantive testimony and found defendants not guilty.  Napue, 360 U.S. at 271.

### III.

Movants next argue that the court imposed unconstitutionally enhanced sentences based on the mandatory application of the federal sentencing Guidelines then in effect.  They rely on United States v. Booker, __ U.S. __, 125 S. Ct. 738 (2005).  In Booker, the Supreme Court "held that mandatory enhancement of a sentence under the Guidelines, based on facts found by the court alone, violates the Sixth Amendment."  United States v. Davis, 407 F.3d 162, 163 (3d Cir. 2005) (citing Booker, 125 S. Ct. at 756).  "To remedy this constitutional infirmity, the Court excised that provision of the statute making application of the Guidelines mandatory."  Id. (citing Booker, 125 S. Ct. at 764).  In addition to the Guidelines, which are now advisory, the court must consider the factors set forth in 18 U.S.C. § 3553(a) in fashioning a sentence which is "sufficient, but not greater than necessary."  18 U.S.C. 3553(a); Booker, 125 S. Ct. at 767.

Each movant's judgment of conviction became final in 2004.  Our Court of Appeals has held that the rule announced in Booker "does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date Booker issued." Lloyd v. United States, 407 F.3d 608, 616 (3d Cir. 2005).  Thus, the court did not err in its use of the mandatory Guideline procedure as it existed at the time it sentenced movants.  They argue that nonetheless we failed to comprehend our pre-Booker statutory sentencing discretion under 18 U.S.C. § 3553(a) and (b).  We disagree.  The court entered what it deemed to be the correct and proper sentences under the Sentencing Guidelines as they then existed and would not have entered a different sentence under any statutory discretion we had at that time.

### IV.

Movants further argue that they were not afforded the effective assistance of counsel.  They advance two arguments.  First, they contend that at their January, 2004 resentencings their counsel should have raised the question of whether their enhancements violated their Sixth Amendment rights.  Second, they claim that their counsel should not have advised them to dismiss their pro se notices of appeal from their amended judgments, which notices of appeal were filed in early February, 2004.

Although Booker had not been decided at the time of their resentencings and amended judgments, the movants assert that there was a line of Supreme Court cases preceding Booker

which foreshadowed its ruling and suggested that their sentence enhancements were unconstitutional.  See Blakely v. Washington, 542 U.S. 296 (2004); Ring v. Arizona, 536 U.S. 584 (2002); Apprendi v. New Jersey, 530 U.S. 466 (2000).  The movants argue that had the proper objections been raised and preserved at resentencing, even though overruled given unfavorable Third Circuit precedent such as United States v. Williams, 235 F.3d 858 (3d Cir. 2000), they would have had grounds to appeal from the judgments entered on resentencing.  Then, they maintain, those appeals "would have been caught up in the general stay of sentencing appeals in the Third Circuit after June, 2004, and thus would have remained active until after the decision in Booker."  (Petrs.' Br. 17); see also Davis, 407 F.3d 162.  Similarly, they assert that even though their counsel advised them to dismiss their pro se appeals from their amended judgments for lack of any appealable issue, the Sixth Amendment argument "could have been raised under the rubric of plain error," and their appeals would have remained active and would not have been final prior to Booker (Petrs.' Br. 17).

      In order to establish a claim of ineffective assistance of counsel, a movant must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  The resentencings and amended

judgments of the movants occurred more than eleven months before Booker, which was decided on January 12, 2005.  They must therefore show that their counsel's failure to predict the holding of Booker was objectively unreasonable.

At their resentencings, we made findings of fact using a preponderance of the evidence standard and treated the Guideline ranges as mandatory.  At that time, our actions were consistent with precedent from the Supreme Court and our Court of Appeals.  Movants concede this point.  "[T]here is no general duty on the part of defense counsel to anticipate changes in the law."  Government of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  That counsel chose not to raise a Sixth Amendment objection to movants' sentences that was contrary to established precedent at the time is not objectively unreasonable.[3]

---

3.  The movants cite to Forte in support of their position.  In Forte, our Court of Appeals determined that counsel's failure to object to the prosecutor's racially motivated peremptory challenges was objectively unreasonable despite the fact that Batson v. Kentucky, 476 U.S. 79 (1986) had yet to be decided.  865 F.2d at 62.  The court, however, emphasized the narrowness of its decision:
> [W]e are not holding that the trial attorney could be held to be ineffective if she had not on her own, even if she had known that Batson was pending, failed to object to the prosecutor's challenges as we do not reach that issue.  It is the fact that she failed to honor Forte's quite reasonable request that she make an objection to preserve his rights under a case then pending in the Supreme Court that has led us to conclude that, assuming the allegations in his motion to be true, she was ineffective.  Thus, our holding is very narrow and this opinion should not be broadly read.  We also hasten to add that we do not imply that any time a trial attorney does not carry out her client's request she may be held to be ineffective ....
>                                              (continued...)

Moreover, if we accepted movants' argument, we would be creating a giant loophole to circumvent the non-retroactivity of Booker. We will not travel down this path.

V.

Michael Hoffner asserts two additional claims in his initial motion.  He first maintains that despite this court's recommendation in his amended judgment that he participate in a drug treatment program, the Bureau of Prisons refuses to view him as eligible.  He asks this court to direct the Bureau of Prisons to deem him eligible for treatment in its Residential Drug Abuse Program.

A district court can recommend, but cannot order, a prisoner's participation in a drug treatment program. United States v. Jackson, 70 F.3d 874, 877-78 (6th Cir. 1995); see also Beckley v. Miner, 125 Fed. App. 385, 387 (3d Cir. Feb. 3, 2005). Under statute and federal regulations it is the Bureau of Prisons that has authority to manage the enrollment of prisoners in drug abuse treatment programs.  See 18 U.S.C. § 3621(b); 28 C.F.R. §§ 550.53, 550.56; see also Jackson, 70 F.3d at 878; Beckley, 125 Fed. App. at 387.  Movants must pursue their complaints through

---

3.(...continued)
   Here, however, the case is extraordinary on the facts
   ....
There is no evidence that the movants requested that Sixth Amendment objections be raised, or that they intended to raise Sixth Amendment issues in their pro se notices of appeal. Furthermore, at the time of their January, 2004 resentencings, Booker was not pending before the Supreme Court.  We do not find the facts of this case to be "extraordinary" and find Forte inapposite.

-11-

the Administrative Remedy Program of the Bureau of Prisons.  See 28 C.F.R. §§ 550.60, 542.10-542.19.  Nonetheless, we have transmitted a letter to the appropriate official at the Bureau, referencing Michael Hoffner's alcohol problem and recommending him for the program requested.

Lastly, Michael Hoffner claims that he should receive good conduct time under 18 U.S.C. § 3624(b) for eleven months he spent in state prison during and after his trial.  No one has pointed to statutory authority requiring that he be credited with good conduct time for his state incarceration.  In addition, § 3624(b) clearly refers to credit for time spent in federal custody because credit is subject to the Bureau's determination that the prisoner has displayed "exemplary compliance with institutional disciplinary regulations."  We do not read this provision as referring to behavior in institutions not under the jurisdiction of the Bureau of Prisons.

VI.

We now consider the joint motion of Hoffner, Sr. and Michael Hoffner for leave to amend their § 2255 motions.  Rule 15 of the Federal Rules of Civil Procedure applies to amendments to § 2255 motions.  See United States v. Duffus, 174 F.3d 333, 336 (3d Cir. 1999).  Under Rule 15(a), after the Government has responded, a movant may amend his § 2255 motion "only by leave of court" and "leave shall be freely given when justice so requires."  See Fed. R. Civ. P. 15(a).  Rule 15(c) provides: "[a]n amendment of a [motion] relates back to the date of the

original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading ...."

Hoffner, Sr. and Michael Hoffner's judgments of conviction became final in February, 2004. See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999); Fed. R. App. P. 4. Their original § 2255 motions were timely filed in February, 2005. Their joint motion to amend their § 2255 motions was not filed until September 23, 2005, after the one-year limitations period for filing such motions had expired. 28 U.S.C. § 2255. Thus, any new claims advanced by movants come after the expiration of the limitations period and are barred unless they can be deemed timely under the "relation back" provision of Rule 15(c). Mayle v. Felix, 125 S. Ct. 2562, 2572 (2005).

In Mayle, the Supreme Court dealt with the issue of relation back under Rule 15(c) in the context of a § 2254 petition. We see no reason why its analysis does not apply equally in the present context. There defendant, a state prisoner, filed a timely § 2254 petition asserting that he had been denied his right of confrontation under the Sixth Amendment when the videotaped statements of a prosecution witness were introduced at trial. After the passage of the limitations period, he sought to amend his petition to include a claim alleging that during the course of his pretrial interrogation the police used coercive tactics to obtain incriminating statements from him and that the admission of those statements at trial

-13-

violated his rights under the Fifth Amendment.  The Supreme Court held that the defendant's Fifth Amendment claim would not relate back to his original petition because his pretrial statements were separated in time and type from his Sixth Amendment claim concerning the videotaped statements of the witness used at trial.  Mayle, 125 S. Ct. at 2571, 2575.  The Court explained that under such circumstances, the later claim did not arise out of "the conduct, transaction, or occurrence" set forth in the original § 2254 petition.  Simply because a late claim arose out of the same underlying conviction as an earlier claim is not sufficient.

Movants request leave to amend their original § 2255 motions to add several intertwined grounds for relief.  They assert that each of these claims arises out of the same "conduct, transaction, or occurrence" as set forth in their original claim that Agent Bellis testified falsely at their trial.  We agree.  All these claims, as will become evident from our subsequent analysis, relate directly to the testimony and impeachment of Agent Bellis at the March, 2001 trial and the Government's alleged failure to provide relevant discovery.  Accordingly, we will grant the motion of Hoffner, Sr. and Michael Hoffner to amend their § 2255 motions.

VII.

Movants assert in their amended § 2255 motions that the Government's failure to produce the Massey and Hanton transcripts at the time of their trial violated the rules announced in Brady

-14-

v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972).  Under Brady, the Government must provide a defendant with evidence favorable to him when it is material to his guilt or punishment.  373 U.S. at 87.  Under Giglio, when the reliability of a witness may be determinative of a defendant's guilt or innocence, the Government must produce evidence affecting the witness' credibility.  405 U.S. at 154.

Movants argue that disclosure of the Massey and Hanton transcripts at their trial would have demonstrated that Agent Bellis had only been qualified as an expert twice despite his testifying at their trial to having been qualified on three occasions.  They also contend that the transcripts would have undermined his ability to decipher "drug jargon" in their case since they are Caucasian and the drug involved was methamphetamine while Massey and Hanton involved African-American defendants and cocaine and marijuana.

In addition to establishing that the Government withheld evidence of impeachment value, a movant must show that the withheld evidence was material to a determination of his guilt or innocence.  Lambert, 387 F.3d at 252.  Evidence is material if there is a "'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Id. at 253 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  The relevant question is:  "'when viewed as a whole and in light of the substance of the prosecution's case, did the government's failure

-15-

to provide ... [the] Brady impeachment evidence to the defense prior to the [] trial lead to an untrustworthy guilty verdict ...?'"  Id. (citation omitted) (brackets and ellipses in original).

The fact that Agent Bellis was qualified as an expert on "drug jargon" only twice instead of on three occasions is of negligible value as impeachment evidence and is not material to a determination of the movants' guilt or innocence.  Nor is it significant that the drug jargon in his previous cases dealt with a different illegal drug than concerned us here.  As noted earlier, Agent Bellis was highly qualified on the topic at hand.  At the time of movants' trial, Agent Bellis had at least eight years of law enforcement experience with all varieties of controlled substances.

For the same reasons, the argument that the jury would have disregarded Agent Bellis' substantive testimony on the Caucasian movants' methamphetamine "drug jargon" simply because the cases in which he was previously qualified as an expert on "drug jargon" involved African-Americans using cocaine and marijuana is without merit.  In any event, movants were made aware of the nature of Agent Bellis' prior testimony at the time of his cross-examination.  Movant's trial counsel questioned him about the types of drugs involved in the cases in which he was previously qualified as an expert, and he responded that they were not methamphetamine but cocaine, crack cocaine, and marijuana.  United States v. Hoffner, Sr., Nos. 00-456-1-3-10,

(E.D. Pa. 2001) (Tr. Mar. 12, 2001 at 92-93).  Brady and Giglio "[do] not compel the government 'to furnish a defendant with information which he already has ....'"  United States v. Pelullo, 399 F.3d 197, 213 (3d Cir. 2005).

In a closely related argument, movants maintain that the Government's failure to produce the Massey and Hanton transcripts at their trial violated their right of confrontation under the Sixth Amendment by undermining their ability to cross-examine Agent Bellis and challenge his reliability.  Neither party provides any extended discussion of this point.  Nonetheless, for all of the reasons we outlined when discussing their claim under Brady and Giglio, we find that any Sixth Amendment violation would not have affected the outcome of the proceedings.

In a similar vein, movants argue that the Government violated the Jencks Act, 18 U.S.C. § 3500, by failing to disclose the relevant portions of Agent Bellis' testimony in Massey and Hanton prior to his cross-examination at their trial.  After a Government witness testifies on direct examination, the Jencks Act requires the Government to disclose prior recorded statements of its witness that are related to the subject matter of his or her testimony.  18 U.S.C. § 3500; United States v. Merlino, 349 F.3d 144, 155 (3d Cir. 2003).  Several circuits have held that "prior trial testimony is not within the scope of the Jencks Act because the witness statements contained therein are a matter of public record rather than being secreted within the government's

files."  United States v. Chanthadara, 230 F.3d 1237, 1254 (10th Cir. 2000); see also United States v. Albanese, 195 F.3d 389, 393 (8th Cir. 1999).  The Third Circuit has not passed upon this issue.  Even assuming the Government was obligated to produce the Massey and Hanton transcripts under the Jencks Act, we find and conclude, as explained above, that any such violation would not have affected the outcome of their trial.

Finally, movants assert that their trial counsel was ineffective for failing to request the production of the Massey and Hanton transcripts in accordance with the Jencks Act and the Brady and Giglio doctrines after Agent Bellis stated that he had been previously qualified as an expert on "drug jargon."  As we have previously stated, in order to establish a claim of ineffective assistance of counsel, a movant must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 688, 694.  Even assuming that trial counsel's failure to request the transcripts was objectively unreasonable, for the reasons already outlined in the discussion of Brady and Giglio, there is not a reasonable probability that the result of the trial would have been different.  Strickland, 466 U.S. at 694.

VIII.

Accordingly, we will deny the motions of Thomas Hoffner, Sr. and Michael Hoffner, as amended, to vacate, set aside, or correct their sentences under 28 U.S.C. § 2255.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA         :      CRIMINAL ACTION
                                 :
          v.                     :
                                 :
THOMAS HOFFNER, SR. and          :      NO. 00-456-01
MICHAEL HOFFNER                  :               -10
```

ORDER

AND NOW, this 16th day of November, 2005, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of Thomas Hoffner, Sr. and Michael Hoffner for leave to amend their motions under 28 U.S.C. § 2255 is GRANTED;

(2)  the motion of Thomas Hoffner, Sr. under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is DENIED;

(3)  the motion of Michael Hoffner under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is DENIED; and

(4)  no certificates of appealability are issued.

BY THE COURT:


/s/ Harvey Bartle III
                            J.